# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RUSHAD CHILDRESS,

                  Petitioner,                Case Number: 2:12-14914

v.                                     HONORABLE SEAN F. COX

CARMEN PALMER,

                  Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Rushad Childress is a state inmate at the Thumb Correctional Facility in Lapeer, Michigan. In 2012, he filed a petition for a writ of habeas corpus in this Court, challenging his convictions for assault with intent to murder and felony firearm. Petitioner then sought a stay to allow him to exhaust unexhausted claims in state court. The Court granted the stay and administratively closed the matter. After exhausting state court remedies, Petitioner moved to reopen this proceeding. The Court reopened the matter. Respondent has now filed an answer in opposition to the petition. For the reasons set forth below, the Court denies the petition.

## I. Background

Petitioner was charged in Genesee County Circuit Court as a third habitual offender with assault with intent to commit murder, felon in possession of a firearm, and felony firearm in connection with a shooting at a Family Dollar Store on June 10, 2008. Tony

Dillard was shot four times, but survived the shooting. On July 12, 2010, Petitioner pleaded no contest to assault with intent to commit murder and felony firearm, pursuant to a plea agreement whereby the prosecutor dismissed the felon-in-possession charge, agreed not to add a concealed-weapons charge, and not to pursue habitual offender status for sentencing purposes. The agreement also provided for a sentence of no fewer than 13 years' imprisonment for the assault conviction and the statutorily mandated two-year sentence for the felony-firearm conviction. On April 25, 2011, Petitioner was sentenced to 13 to 20 years' imprisonment for the assault conviction and 2 years' imprisonment for the felony firearm conviction.

Petitioner filed a motion to withdraw his plea, which the trial court denied. Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied leave to appeal. *People v. Childress*, No. 307058 (Mich. Ct. App. June 25, 2012). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, where leave to appeal was also denied. *People v. Childress*, 491 Mich. 944 (Mich. June 25, 2012).

Petitioner then filed this habeas corpus petition, raising these claims:

I.    Conflict of interest.

II.   Deficient attorney performance.

III.  Ineffective assistance of counsel.

IV.   Deficient attorney performance at hearing to withdraw plea.

Respondent filed a motion to dismiss on exhaustion grounds. In response, Petitioner

sought a stay of the proceedings to allow him to return to state court and exhaust his remedies there.  The Court denied Respondent's motion to dismiss and granted a stay in this matter. (ECF No. 11).  Petitioner filed a motion for relief from judgment in the trial court, raising the same claims raised in his habeas petition.  The trial court denied the motion.  *See* 11/4/13 Op. & Order Denying Motion for Relief from Judgment (ECF No. 16-3).  The Michigan Court of Appeals denied Petitioner's application for leave to appeal from the trial court's decision. *See* 4/7/14 Order (ECF No. 16-4).  The Michigan Supreme Court also denied leave to appeal. *People v. Childress*, 497 Mich. 951 (Mich. Feb. 3, 2015).

Petitioner then filed a motion to lift stay in this Court.  The Court granted the motion and directed Respondent to file an answer to the petition.  Respondent has filed an answer and submitted the relevant state court record.  Petitioner filed a reply to the answer.

## II.  Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could

4

disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398 (2011).

### III.  Discussion

Petitioner raises four claims for habeas corpus relief, all of which concern the alleged

ineffectiveness of Petitioner's first and substitute defense attorneys. Petitioner argues that his first attorney was ineffective during the plea process and that counsel labored under a conflict of interest during the hearing on Petitioner's motion to withdraw his plea. He argues that substitute counsel, who was appointed to represent Petitioner during proceedings related to Petitioner's motion to withdraw his plea, was ineffective for failing to file a new or supplemental motion to withdraw his plea. The Court finds no basis for relief on any of these claims.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) quoting *Strickland*, 466 U.S. at 688 (internal quotes omitted).

6

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). The "prejudice" prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

First, Petitioner argues that his original attorney was ineffective and his plea was involuntary because counsel misled Petitioner as to the time he would actually serve in prison. Petitioner states that counsel informed him that the State's economic crisis would result in him serving less than his minimum sentence. A trial attorney's erroneous advice regarding the consequences of a guilty plea may render the representation constitutionally

7

defective.  *See Padilla v. Kentucky*, 559 U.S. 356, 368-371 (2010) (holding that failure to advise of deportation consequences of guilty plea resulted in constitutionally defective representation).  A trial court's proper plea colloquy ordinarily cures any misunderstandings that a defendant may have about the consequences of a plea.  *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).  In cases challenging the voluntariness of a plea agreement, a petitioner is bound by any in-court statements made regarding the petitioner's understanding of the plea.  *Id.* at 564.  "If we were to rely on [petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless. . . . '[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.'"  *Id.* at 566 quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).

The trial court denied Petitioner's motion to withdraw his plea because the plea colloquy showed that Petitioner was fully and accurately informed of the sentence he would receive and Petitioner denied that any promises were made to him other than those stated on the record.  *See* 3/25/11 Op. & Order (ECF No. 21-14).  The plea hearing transcript supports the trial court's finding.  Petitioner stated he understood the plea agreement and that no promises outside those stated on the record had been made to him.  Petitioner is bound by these in-court statements and his contention that counsel was deficient in advising him regarding the sentence he would receive fails based on this admission.  *See Ramos,* 170 F.3d at 564.

Second, Petitioner argues that defense counsel Major White labored under a conflict

8

of interest during the hearing on Petitioner's motion for withdrawal of plea. Petitioner sought to withdraw his plea on the ground that White incorrectly informed him that the State of Michigan would reinstate good-time credit and that he could therefore expect to serve less time than the fifteen years provided by the plea agreement. Two hearings were conducted regarding Petitioner's motion. At the first, Petitioner was formally represented by White, but argued the motion himself. The trial court judge asked White whether he had informed Petitioner that he would be eligible for good time credit. White replied that the possibility of good-time credit was briefly discussed after the plea was entered as a potential solution to the overcrowding of Michigan's prisons. *See* 9/27/10 Transcript at 7, ECF No. 21-7, Pg. ID 403. The trial court appointed Neil Szabo as substitute counsel to represent Petitioner on January 3, 2011. (ECF No. 21-13). Petitioner was represented by Szabo at a second hearing regarding the motion was held at the end of January.

A criminal defendant is entitled to the effective assistance of counsel free from conflict. *Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). In *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980), the Supreme Court held that prejudice is presumed if counsel is burdened by an actual conflict of interest. The presumption of prejudice applies only if the defendant demonstrates that counsel: (1) "actively represented conflicting interests;" *and* (2) that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350, 348. Even assuming that defense counsel White actively represented conflicting interests at the first hearing on Petitioner's motion to withdraw plea, Petitioner has not shown that his attorney's conflict adversely affected his performance. Petitioner was represented by

9

different counsel during the second hearing on his motion to withdraw plea.  No new evidence or arguments not presented at the first hearing were presented at the second.  In addition, no evidence was presented that an alleged conflict adversely affected the first attorney's performance at the prior hearing and the Court finds none.  The state court's determination that this claim lacked merit is not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner's third and fourth claims concern substitute counsel Szabo's representation and are essentially the same claim.  Petitioner argues that Szabo was ineffective when representing him during his plea withdrawal proceedings because he failed to file a new motion for plea withdrawal or to supplement Petitioner's motion.  Respondent first argues that this claim is procedurally defaulted.   "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

Petitioner's allegations that Szabo was ineffective in failing to file a new or supplemental motion for plea withdrawal or calling former defense counsel as a witness are conclusory and lack factual support.  He fails to specifically identify additional claims that

10

should have been raised in a new or supplemental motion or what additional information may have been elicited by former defense counsel's testimony. "[C]onclusory and perfunctory claims" such are these are insufficient to overcome the presumption of reasonable professional assistance afforded attorneys under *Strickland*. Habeas relief is denied.

### IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

### V.  Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus and a

11

certificate of appealability are **DENIED**.

Dated:  February 16, 2017                     s/Sean F. Cox
                                              Sean F. Cox
                                              U. S. District Judge


I hereby certify that on February 16, 2017, the foregoing document was served on counsel of record via electronic means and upon Rushad Childress via First Class mail at the address below:

Rushad Childress 651842
THUMB CORRECTIONAL FACILITY
3225 JOHN CONLEY DRIVE
LAPEER, MI 48446


                                              s/J. McCoy
                                              Case Manager

12